May it please the Court, Matthew Emmerich on behalf of Alexandra Spiegel. The issue in this case involves a release clause in a deed and promissory note. And specifically, the issue deals with the third sentence of that particular release clause. Appellants have contended that the release clause is not ambiguous and operates as follows. The first sentence provides a general release based on loan-to-value ratio. So if the loan-to-value ratio was 50 percent or less on the unimproved property at issue in this case, then the lender would release the improved property, or the one that had the water ski lakes on it. Valuation, to determine whether a loan-to-value ratio was 50 percent or less, was set forth in the second sentence. It said it would either be by mutual agreement or it would be by an appraiser, the appraiser to be picked by the lender. The third sentence, the one that's at issue, provides for two different types of releases. It provides for a release upon the payment of a maximum amount of $150,000 or if the parties determined that the value of the unimproved property was such that the loan-to-value ratio was 50 percent or less, they could have an appraisal and get something less than $150,000. Or more than $150,000. Excuse me, Your Honor? Or more than $150,000? No, Your Honor. And that was because of the word maximum. And that's because of the word maximum. The third sentence was intended to operate very differently than the first sentence. And what we've maintained is that the trial court and the bankruptcy appellate panel basically turned the third sentence into the first sentence because they found that you still had to maintain loan-to-value ratio on the unimproved property, even though the language says $150,000 maximum is what the borrower has to pay. As I get this, this was all negotiated when everybody was thinking property values were going up. Well, that's what they've claimed. But two things, I think, are important, Your Honor. One is — Well, come on. Isn't that how this was negotiated? And that's why it says maximum, but in no event more than is required to reduce the loan value to 50 percent. And wasn't that the idea? I'm not saying that because property values go down, the words of a contract change. I'm just saying that's what was in their mind at the time. They were expecting things to go up, so this is how they wrote it. And they did, Your Honor. And there's two things that happened, though. One is that, and it's in the trial testimony, is that Mr. Harris, Ms. Spiegel's attorney, testified that the reason they wanted the $150,000 cap was twofold. One is so that if there was a sale, they could have a quick sale without valuation, just pay the $150,000 in order to effectuate the sale. But also, if property values fell, then they wouldn't have to end up paying far more than $150,000. They could end up paying several hundred thousand dollars. The lender protected themselves also in case property values went down, and that was through personal guarantees. So at the time the $150,000 maximum release shows up in the release clause. Why are we concerned with personal guarantees if we're dealing with the interpretation of a written contract? Well, what I'm just trying to show you, Your Honor, is that both parties were trying to protect themselves just in case property values went down. You're trying to bring in circumstances, and we're trying to find out what words mean. Let's stick with what words mean. Okay. So, again, the intent of the $150,000 was twofold. One, to allow for a quick release, and even the trial court recognized that, in order to avoid a valuation, a potentially protracted valuation process, which is essentially what led to this case being here in the first place. I guess you're – sorry. I guess you're – Somebody figured that what was said was ambiguous. Well, the alleged – You think it wasn't ambiguous? I do not believe it was ambiguous. So you don't think there should have been any outside testimony to show what the parties really meant? It should have stayed right with your interpretation. I think it can be interpreted just from the words alone in the document, yes, Your Honor. But I do believe that even if it's allegedly ambiguous, I believe that our interpretation meets the rules of interpretation because it gives meaning to the plain language of the agreement. It doesn't negate an expressed term. Is this under California law? Yes, Your Honor. So let me see if I understand your reading and example. Suppose that the improved property, which had, I think, $1,325,000 first and second deed of trust already on it, suppose that improved property were to sell for $5 million, right? Your position would be that the borrower would simply tender $150,000, not anything lower than that? If they wanted to avoid valuation, yes, they could. Now, let's suppose that the improved property were to sell not for $5 million but for $2 million, and so there would only be maybe $675,000 left over from the senior secured obligations, right? What would happen in that case? So if I understand, Your Honor said the improved property. Do you mean the unimproved property? Yeah. Suppose the unimproved property appraised, right, at $2 million. You would still pay $150,000 to release if you wanted a quick release in the event of a sale? If you wanted a release for any other purpose? You could say I have to pay less than $150,000 because the unimproved property now is not worth $3.1 million. It's only worth $2 million. And, therefore, there shouldn't be any more than $1 million on the property, so, therefore, I don't have to give the release. But that's why we asked. Your question is exactly why we asked for a capped amount. The lender chose the amount. We didn't choose the amount. The lender did, his agent, Philippa. We just asked for a fixed amount in order to release the property because we were trying to sell the improved property. So if there was a sale, we wanted to make sure that, one, if we had to do a quick sale for whatever reason, we could avoid valuation, doing the appraisal, and pay the maximum amount. Or if property values declined, we had some protection there that would still allow, during the course of this loan, three years, to sell the property on a release at that amount. If you're right about how to read the words of this clause, then I take it this has to go back for a trial to find out whether there was a proper tender, whether there's a valid offer of sale, et cetera, et cetera? We believe that all those issues have been resolved, but that those are possible issues that the Court could look at again. Well, I thought the bankruptcy judge decided not to conclusively resolve those and made some gestures in that direction, but didn't actually resolve those. I thought that because the bankruptcy court, and as affirmed by the BAP, found or read the clause differently, they never – the bankruptcy court never actually found on those issues. I would say that the Court did find on those issues, and that finding that the case basically came down to the release clause. It didn't have anything to do with those issues. With respect to the sale, the lender had testified under oath at trial and deposition and a plain confirmation hearing that they had no problem with the sale. So I would think that issue was resolved. So you were on common ground by saying that diversity case, California law applies, 1635 SEC of the Civil Code applies, and what you say is 1638 plain meaning applies. Plain meaning has only one meaning, and that is what you suggest. That's what I suggest, Your Honor. Even if there is interpretation, again, I think the Civil Code and some of the cases we've cited say that the idea is to preserve terms, to not, if at all possible, not to negate terms. And we believe what the BAP and the trial court has done here is basically negate the maximum amount because if you always have to have loan-to-value ratio under the third sentence, then you always have to do valuation, and you could end up paying far more than $150,000 upon a release, as Your Honor put in the hypothetical. If the unimproved property values dropped and you had to maintain loan-to-value ratio, you could end up paying far more than $150,000. Right. All right. Thank you very much. What sort of deference do we allow the trial court in its findings as to meaning? What's our standard review? Well, we argue that the trial court would review de novo. We've got a lot of language that we review with great deference to the trial court. What case do you have that that's wrong? Well, Your Honor, we didn't, unfortunately, we didn't cite any of those cases. We argued that this was a de novo review of the trial court. Because the trial court made a legal question finding as to the existence of an ambiguity, and you say that applying the proper legal test, there is no ambiguity. Well, twofold. One, we say we don't believe there is an ambiguity. We believe it's clear on its face. But, two, if there is an ambiguity, then we believe the court misapplied the rules of interpretation because How did they misapply the rules of interpretation? Well Cite me to the section of the civil code which you say was misinterpreted. Sure. One is for the bankruptcy appellate panel, 1654, the BAP started its review by noting that language or, excuse me, that the person allegedly causing any ambiguity, that The consular profferendum. It should be most interpreted against that party. You shouldn't start there. But you shouldn't start there. Bank of the West. We believe that the BAP started there. Bank of the West said you have to start at the beginning of the 1635 and work your way down. Right. And that, Your Honor, we believe is the last resort. Hey, we looked at everything. We can believe both sides. And so we interpret against the party who caused the ambiguity. Although there is another code section, I believe it's 1858, that says if you can't resolve the ambiguities, then you resolve it in favor of the party it was intended to benefit, which we believe was Ms. Spiegel. Well, if you get past the law and you're talking about the trial court's consideration of the extrinsic evidence, it seems to me it's clear there that we have to show deference to the bankruptcy court. Well, even if that's correct, Your Honor. Just tell me if I'm right on that. Then we do have to show deference, in some cases extensive deference, to bankruptcy court findings when they're interpreting the extrinsic evidence as demeaning. Is that correct or incorrect? I believe, Your Honor, that what we've cited is that this is a de novo review, and so you would review it without giving deference. Well, what do we do with the extrinsic evidence? That was my point. Well, Your Honor, I'm not, I guess. When the extrinsic evidence extends beyond the words of the contract, what is our standard review of the bankruptcy judge's interpretation of that evidence? Well, I'm even wondering, Your Honor, what extrinsic evidence. The trial court looked at the words themselves. Looked a little bit at the negotiations that went on for the loan itself. I understand all that. I'm trying to get what your structure is of how we review this case, and my question was where the extrinsic evidence goes beyond the words of the complaint and the bankruptcy judge makes a determination as to meaning, what's our standard review for the bankruptcy judge's determination? Is it? Well, again, we're arguing that it wasn't ambiguous. If it is ambiguous, then you are going to give some deference, Your Honor. I just want to know one simple question. You keep answering the question you want to answer. I prefer you answer the question I want answered. I would suppose that you do have to give some deference. The level of deference, I'm not sure, Your Honor. Well, Comstack outlines for you it's a great deference. And I just wondered whether you had some other case that would tell us what you were arguing for. Well, and with respect to the trial court, even if you give great deference, the trial court in our position brought in an implied term, saying that it only applied if property values, if you made the assumption that property values were always going to be the same or increase. And we believe that you can't negate a plain term with an implied term. And we believe that's what the trial court did in violation of the rules of interpretation. All right. Thank you very much.  I'm going to go to Napoli. May it please the Court. Michael Sanoff representing the Wright Grandchildren Trust and Michael Wright. I think the trial court did not imply a term into the contract. What the trial court was doing was explaining the circumstances that gave rise to this term coming into the contract, this one line in the third sentence of the release provisions of the deed of trust. Why should we consider the circumstances rather than the text? I think we should consider the circumstances. No, you do. My question is why. Because the trial court found some ambiguity in the language, felt that extrinsic evidence was necessary. What ambiguity did the trial court find? What were the two meanings at least which the clause had? In that very same paragraph that we're talking about, you have language that says clearly a loan to value of 50 percent or less is required, and then you go to the one sentence that the appellant would like to focus on, and it says the absolute language of $150,000 for a release. Why should we consider the circumstances rather than the text?  Why should we consider the circumstances? Rather than circumstances, should we not invoke canons of statutory interpretation such as the specific overrides the general, the latter overrides the former? The – it's my understanding, Your Honor, that you are to consider the entire circumstances of the document. Look at the document as a whole. The sections, I think it's 1644, says we consider the whole document. Yes. Not the circumstances under which the document was considered. In other words, if you consider the entire document. Entire document. Entire phrase, right? Right. Now, answer me why we should not apply canons of statutory interpretation to the text rather than go outside the text to circumstances which may have caused the text to come about. Because I think that if the Court feels that there is any ambiguity in the document  interpretation to the text. What is the ambiguity? What are the two meanings that the Court gave to this paragraph? Meaning one, tell me. Meaning two, tell me. Meaning one is that a loaned value of 50 percent or less must be maintained for purposes of any release. That's in the very language of the paragraph we're talking about that's captioned release. It's in the subordination language. All right. How did the trial court, reading the first sentence, dispose of the third sentence? Or did it say that the third sentence was a nonsense and should not be considered? I think the trial court effectively said that the third sentence did not override the other language. And why did it not override it? Because it was so clear from the other language and the history of the transaction with these parties and their understanding. But going to the circumstances again rather than the text, I'm asking you what was the ambiguity that the trial court found not in the circumstances, not in the motivation, not in the purposes, not in the intents, but in the language? What was it? What was the ambiguity? The language, if Your Honor looks at the language itself in paragraph 17, it starts out by saying that the ---- Pardon me. I don't need to read it. I'm not asking you to read it. I can read it. I'm not asking you what it says. Let's see if I can focus your attention on the question. What did the trial court find was the ambiguity? I believe ---- How can I find where the trial court found an ambiguity? I believe the trial court found the ambiguity because of the difference in the language from the sentence that had been inserted by Ms. Spiegel's counsel, Mr. Harris, and the language that was in the document itself and had been modified, one referring to the loan-to-value of 50 percent or less, the other referring without regard to loan-to-value, at least in the first phrase of it, to the fact of $150,000. So it found that there were actually two standards for making the release or for giving the release. One, loan-to-value, if it exists. The other, loan-to-value is irrelevant. I believe that that's probably correct. Now, how did it deal with the term maximum dollar amount the borrower has to pay $150,000? That doesn't bear any relationship to loan-to-value, does it? It does not. That phrase does not bear any relationship to loan-to-value. But then if you go on, the entirety of that paragraph speaks to loan-to-value, except for that one phrase. Yes. So the one exception to loan-to-value is pay $150,000. And if the borrower tenders $150,000, whether it's out of the transaction or out of a kitty that she's kept from gambling proceeds, it doesn't make any difference. The release has to be given out. If you just focused on that phrase, that's correct, Chuck. Thank you. But I don't, in due respect, I don't think you can just focus on that phrase. You can't single out just a phrase to interpret a contract. The contract has to be considered as a whole in all of its provisions, and all of the provisions here are fairly consistent in requiring the loan-to-value of 50 percent or less for purposes of a release. Suppose you could take the contract itself and reasonably come to the conclusion that both sides are right. Well, then you're faced at that point with the clear error standard of review of the trial court and the BAPS decision. The question was it? Review the BAPS decision. We review the bankruptcy court. The question was asked earlier about what the standard of review here is before you. And I think if you read the In re Tommen case, which is cited by us, it is fairly clear that where the trial court is considering extrinsic evidence, you review findings of fact for clear error. Not a de novo review. Well, it is also a case, say, of great deference. Yes. I'm getting back to where there's no extrinsic evidence, just the contract itself. Suppose that a reasonable reading of the contract could be you could justify a decision made in favor of either party. Make that assumption. All right. Okay. If that is so, then what is the responsibility of the trial court? The trial court has weighed that and come to its conclusion. It's made findings. And I believe that you as the reviewing panel are to give deference to its findings. If the trial court concludes that they could read just the contract itself and find it in favor of both people, then it's ambiguous, right? Yes. And at that point, then, you'd have to take extrinsic evidence. Counsel indicates that there's no ambiguity. You can't read it the same way. It will only come out for one person. If you set aside the extrinsic evidence, how would you show that the bankruptcy court was correct in asking for extrinsic evidence? Because if you look at the, Your Honor, if you look at the release provision itself that is cited here, it starts out saying beneficiary agrees to release provided the loan to value does not exceed 50 percent of the existing loan balance. If you go on and it talks about how that value is determined. And then it comes to the inserted sentence and the inserted language of $150,000, but continues on saying, but in no event more than is required to reduce the loan to value to less than 50 percent. And then it talks about how long it's going to take to determine the 50 percent. So the 50 percent was in there throughout the entirety of this document. Is that what the district court held? I believe it did. District, the bankruptcy court pretty much just wrote out that sentence. The maximum amount the borrower has to pay is $150,000. It decided that the purpose of this whole thing was the 50 percent requirement and that was it. And it wrote out that sentence. Well, I don't know that, Your Honor, I would use that language. But, yes, the bankruptcy court felt that the other language controlled in the circumstances of the transaction. What does that mean, in the circumstances of the transaction? Well, the circumstances of the transaction here, Judge, were that the appellants were seeking a loan. They had sought the loan from other lenders of $1.7 million. In the back are some characters. Here is the one where $1.7 million is stated in extent, and it is noted here, $1.7 million. What's going on with the $1.7 million?   Then you come to the contract itself Then the documents are drafted very consistent with that. Mr. Wright, as the transaction is being put together, declined to make the loan on behalf of the trust, the limited partnership, because there wasn't a 50% loan to value there. And that's how we get to the second parcel of property acting as security for the loan transaction. Then the documents are drafted. That language is inserted at the last minute. Well, yeah, there was a lot of back and forth. The problem is I'm not sure the principals ever looked at this thing, so all we really have are the words of the document. There wasn't really a finding by the bankruptcy court yet that this was intended here and that was intended there, some disputed facts that were resolved. I didn't understand that there was actually a dispute. We know what the beneficiary wanted. We know what the seller of the property wanted. We know what they wanted. Right. They kind of wanted two different things, but we ended up with words. Well, I believe the bankruptcy court, having weighed all the evidence, the trial judge resolved what he felt happened there. Okay. And I'd like to say one more thing here. On this issue of trying to just parcel out that one sentence and saying that controls the release provisions here, if you look at that one sentence that the borrower has to can pay $150,000, but no more than required, et cetera, that language in and of itself doesn't require that the right grandchildren limited partnership release the property upon the payment of the $150,000. Nowhere in this sentence does it say that. The appellants argue in reply that, well, but then you consider this sentence in the context of the caption on the paragraph, and that's our whole point. Then you consider it in the concept of circumstances. Let me give you a possible reading of this language, and that is there is a general rule about releasing the approved property, whether there's a sale or not a sale. There's just a general rule. And that's restricted by the 50% requirement. And then there's a more specific rule about what happens when there's a sale. And then you have at the end a sentence that actually goes back to the first part about how to value. So you can make sense of every sentence in this without throwing out everything. And I'm just wondering, if you read the first part as a release any time and the second part as a release upon sale, isn't that the way to read it? And isn't that really the only way to read it? I can't read it. I can't find a way to give meaning to every single part of this without reading it that way. I can't think of another way to read it and still give meaning to every single part. Your Honor, if the $150,000 is paid, there is nothing in here, nothing in this language, unless you imply it in the language, that says upon that payment, the right grandchildren shall release the approved parcel. So they get to hold the security on the approved parcel and get $150,000? Is that your interpretation of this? We didn't put it there, Judge. Is that your interpretation of it? That's what this would say. Okay. Does that make sense? I'd like to go one step further, though. I don't, frankly, Judge, I appreciate the confusion here. We're frustrated by it. But I don't think you can come in here and or the appellants can come in here and just interpret this whole release language and the entire transaction predicated on this one phrase. I just interpreted the whole thing, every single sentence, and gave meaning to every single sentence. That's not giving meaning to only one part of it. So, I mean, I'm willing to hear another interpretation that gives meaning to every single sentence. But I haven't heard it. Well, frankly, I don't have an answer, Judge, to the $150,000 if there isn't to be a release. I mean, the language just is confusing as you look at both of them, considering the first few sentences in context of that singular sentence and then the last two sentences. Now, if this case is reversed and remanded to the trial court, what issues do you think are still outstanding, if any? Well, from our perspective, the evidence is fairly clear that there is no evidence here of an adequate tender to Mike Wright, to the Wright Grandchildren Trust, of the $150,000. Should we remand? Do we instruct the court below to enter judgment in your favor because there's no evidence of any tender? I believe so, Judge. There is no evidence of tender. Is that an issue to be tried? Yes, there's evidence there in the trial court. We argued it. We raised the issue. Well, then the remand would be to refer the proceedings and to determine issues of fact still pending, such as was there a tender? Sure. Okay. All right. Thank you very much, sir. Thank you, Judge. Counsel, you have a minute for rebuttal. All right. Thank you very much. We have rebuttal. Matter is submitted. Thanks, counsel, for your argument on both sides.
judges: Restani, Wallace, Bea